DCP:JPL/NMA
F. #2016R00124

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

     - against -

GUNVOR S.A.,

          Defendant.

– – – – – – – – – – – – – – – –X

            PLEA AGREEMENT

            Criminal Docket No. 24-85 (ENV)

## PLEA AGREEMENT

The United States of America, by and through the Department of Justice, Criminal Division, Fraud Section (the "Fraud Section"), the Money Laundering and Asset Recovery Section ("MLARS"), and the United States Attorney's Office for the Eastern District of New York (the "USAO-EDNY") (collectively, the "Offices"), and GUNVOR S.A. (the "Defendant" or "Company"), by and through its undersigned attorneys, and through its authorized representative, pursuant to authority granted by the Defendant's Board of Directors, hereby submit and enter into this plea agreement (the "Agreement"), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The terms and conditions of this Agreement are as follows:

### Term of the Defendant's Obligations Under the Agreement

1.     Except as otherwise provided in Paragraph 12 below in connection with the Defendant's cooperation obligations, the Defendant's obligations under the Agreement shall last and be effective for a period beginning on the date on which the Court accepts the Defendant's guilty plea and ending three years from that date (the "Term"). The Defendant agrees, however, that in the event the Offices determine, in their sole discretion, that the Defendant has knowingly

1

violated any provision of this Agreement or failed to completely perform or fulfill each of the Defendant's obligations under this Agreement, the Offices, in their sole discretion, may impose an extension or extensions of the Term for up to a total additional time period of one year, without prejudice to the Offices' right to proceed as provided in Paragraphs 26 through 29 below.  Any extension of the Term extends all terms of this Agreement, including the terms of the enhanced self-reporting described in Attachments D, E, and F, for an equivalent period.

## The Defendant's Agreement

2.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant agrees to waive its right to grand jury indictment and its right to challenge venue in the United States District Court for the Eastern District of New York, and to plead guilty to a one-count criminal Information charging the Defendant with Conspiracy to Violate the Foreign Corrupt Practices Act of 1977 (the "FCPA"), as amended, in violation of Title 18, United States Code, Section 371 and Title 15, United States Code, Section 78dd-3 (the "Information").  The Defendant further agrees to persist in that plea through sentencing and, as set forth below, to cooperate fully with the Offices in their investigation into the conduct described in this Agreement and the Statement of Facts attached hereto as Attachment A (the "Statement of Facts").

3.      The Defendant understands that, to be guilty of this offense, the following essential elements of the offense must be satisfied:

(a)      An unlawful agreement between two or more individuals to violate the FCPA existed; specifically, as a person or entity, while in the territory of the United States, corruptly to make use of the mails and any means and instrumentalities of interstate commerce and to do any other act in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of

value, to a foreign official, and to a person, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist the Defendant and its co-conspirators in obtaining and retaining business for and with, and directing business to, the Defendant and any person;

(b)     The Defendant knowingly and willfully joined that conspiracy;

(c)     One of the members of the conspiracy knowingly committed or caused to be committed, in the Eastern District of New York or elsewhere in the United States, at least one of the overt acts charged in the Information; and

(d)     The overt acts were committed to further some objective of the conspiracy.

4.     The Defendant understands and agrees that this Agreement is between the Offices and the Defendant and does not bind any other division or section of the Department of Justice or any other federal, state, or local, or foreign prosecuting, administrative, or regulatory authority. Nevertheless, the Offices will bring this Agreement and the nature and quality of the conduct, cooperation and remediation of the Defendant, its direct or indirect affiliates, subsidiaries, and joint ventures, to the attention of other law enforcement, regulatory, and debarment authorities, as well as Multilateral Development Banks ("MDBs"), if requested by the Defendant.

5.     The Defendant agrees that this Agreement will be executed by an authorized corporate representative.   The Defendant further agrees that a resolution duly adopted by the

3

Defendant's Board of Directors in the form attached to this Agreement as Attachment B ("Certificate of Corporate Resolutions"), authorizes the Defendant to enter into this Agreement and take all necessary steps to effectuate this Agreement, and that the signatures on this Agreement by the Defendant and its counsel are authorized by the Defendant's Board of Directors, on behalf of the Defendant.

6.    The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

7.    The Offices enter into this Agreement based on the individual facts and circumstances presented by this case, including:

(a)    The nature and seriousness of the offense conduct, as described in the Statement of Facts, including a multi-year scheme to pay more than $90 million to intermediaries knowing that a portion of the payments would be used to bribe senior government officials in Ecuador in exchange for the Defendant obtaining and retaining lucrative business, resulting in profits of more than $384 million to the Defendant;

(b)    The Defendant did not receive voluntary disclosure credit pursuant to the Criminal Division's Corporate Enforcement and Voluntary Self-Disclosure Policy (the "Corporate Enforcement and Voluntary Self-Disclosure Policy"), or pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 8C2.5(g)(1), because it did not voluntarily and timely disclose to the Offices the conduct described in the Statement of Facts;

(c)    The Defendant received credit for its cooperation with the Offices' investigation pursuant to U.S.S.G. § 8C2.5(g)(2) because it cooperated with the investigation and demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct; the Defendant also received credit for its cooperation and remediation pursuant to the Corporate

Enforcement and Voluntary Self-Disclosure Policy, by, among other things: (i) producing documents to the Offices from multiple foreign countries expeditiously while navigating foreign data privacy and criminal laws; (ii) providing information obtained through its own internal investigation to the government, which allowed the government to preserve and obtain evidence as part of the government's investigation; (iii) making detailed, factual presentations to the Offices; (iv) arranging for the interview of an employee based outside the United States; (v) promptly collecting, analyzing, and organizing voluminous information, including complex financial information, at the request of the Offices, and producing an analysis of trading activity conducted by multiple outside forensic accounting firms retained by the Defendant; (vi) translating foreign language documents to facilitate and expedite review by the Offices; and (vii) imaging the phones of relevant custodians at the beginning of the Defendant's internal investigation, thus preserving business communications sent on mobile messaging applications;

(d)     The Defendant provided to the Offices all non-privileged facts known to it, including information about all individuals involved in the conduct described in the attached Statement of Facts and conduct disclosed to the Offices prior to the Agreement;

(e)     The Defendant engaged in timely and appropriate remedial measures, including: (i) eliminating the use of third-party business origination agents; (ii) enhancing its third party due-diligence process; (iii) developing and implementing a control framework for internal business developers and additional layers of review and approval for counterparty payments; (iv) enhancing the independent compliance committee with responsibility for reviewing high-risk transactions; (v) engaging resources to review the Company's compliance program and test the effectiveness of the Company's overall reporting process, its reporting hotline and the effectiveness of the investigation of reports made through the hotline; (vi) evaluating and updating

its compensation policy to better incentivize compliance with the law and corporate policies; (vii) hiring additional compliance personnel; (viii) testing and enhancing its compliance program, including by conducting compliance culture reviews, testing new third party due diligence process and payment controls, and evaluating controls around business development activities; and (ix) developing and implementing a risk-based business communications policy that addresses the use of ephemeral and encrypted messaging applications;

(f)     The Defendant has enhanced and has committed to continuing to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to this Agreement ("Corporate Compliance Program");

(g)     Based on the Defendant's remediation and the state of its compliance program, and the Defendant's agreement to report to the Offices as set forth in Attachment D to this Agreement ("Enhanced Compliance Reporting Requirements"), the Offices determined that an independent compliance monitor was not necessary;

(h)     The Defendant has a history of misconduct. In October 2019, the Company reached a resolution with the Office of the Attorney General of Switzerland resulting from a corrupt scheme to bribe officials in Congo-Brazzaville and Côte d'Ivoire to secure oil contracts obtained between approximately 2009 and 2012. As part of the 2019 Swiss resolution, the Defendant admitted that it lacked sufficient controls to prevent the underlying misconduct and failed to take "all the reasonable organizational measures" required to prevent the Defendant's employees and agents from engaging in bribery. The conduct described in the instant Statement of Facts was occurring, in part, at the same time as the prior Swiss investigation and resolution;

(i)     The Defendant is entering into a parallel resolution with the Office of the

Attorney General of Switzerland relating to certain conduct described in the Statement of Facts; and

(j)     The Defendant has agreed to continue to cooperate with the Offices in any ongoing investigation as described in Paragraph 12 below.

(k)     Accordingly, after considering (a) through (j) above, the Offices have determined that the appropriate resolution in this case is for the Defendant to plead guilty to one count of conspiracy to violate the anti-bribery provisions of the FCPA pursuant to this Agreement; a criminal monetary penalty in the amount of $374,560,071, which reflects a discount of 25 percent off the 30th percentile of the applicable Sentencing Guidelines fine range, taking into account the Company's cooperation and remediation, as well as its prior history, pursuant to the Corporate Enforcement and Voluntary Self-Disclosure Policy; and forfeiture in the amount of $287,138,444.

8.     The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including, but not limited to, the following:

(a)     to plead guilty as set forth in this Agreement;

(b)     to abide by all sentencing stipulations contained in this Agreement;

(c)     to appear, through its duly appointed representatives, as ordered for all court appearances, and obey any other ongoing court order in this matter, consistent with all applicable U.S. and foreign laws, procedures, and regulations;

(d)     to commit no further crimes;

(e)     to be truthful at all times with the Court;

(f)     to pay the applicable fine and special assessment;

(g)     to consent to and to pay the applicable forfeiture amount;

(h)     to cooperate fully with the Offices as described in Paragraph 12;

    (i)  to continue to implement a compliance and ethics program as described in Paragraphs 9 and 10 and Attachment C; and

    (j)  to report to the Offices annually during the Term regarding remediation and implementation of the compliance measures described in Attachment C, prepared in accordance with Attachment D of this Agreement.

  9.  The Defendant represents that it has implemented and will continue to implement a compliance and ethics program that meets, at a minimum, the elements set forth in Attachment C. Such program shall be designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with foreign officials or other activities carrying a high risk of corruption. Thirty days prior to the expiration of the Term, the Defendant, by the Chairman of the Board of Directors and Global Head of Ethics and Sustainability of Gunvor S.A., will certify to the Offices, in the form of executing the document attached as Attachment F to this Agreement, that the Defendant has met its compliance obligations pursuant to this Agreement. Each certification will be deemed a material statement and representation to the executive branch of the United States for purposes of Title 18, United States Code, Sections 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

  10.  In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Defendant represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies, and procedures regarding compliance with the FCPA and other applicable anti-corruption laws. Where necessary and appropriate, the Defendant

will adopt new or modify existing internal controls, compliance policies, and procedures in order to ensure that the Defendant maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of the FCPA and other applicable anti-corruption laws.  The compliance program, including the internal accounting controls system, will include, but not be limited to, the minimum elements set forth in Attachment C.

11.    Except as may otherwise be agreed by the parties in connection with a particular transaction, the Defendant agrees that in the event that, during the Term of the Agreement, the Defendant undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Defendant's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in Attachment A of the Agreement attached hereto, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the Offices' ability to breach under this Agreement is applicable in full force to that entity.  The Defendant agrees that the failure to include these provisions in the transaction will make any such transaction null and void.  The Defendant shall provide notice to the Offices at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form.  The Offices shall notify the Defendant prior to such transaction (or series of transactions) if they determine that the transaction(s) will

have the effect of circumventing or frustrating the enforcement purposes of this Agreement.  If at

any time during the Term of the Agreement the Defendant engages in a transaction(s) that has the

effect of circumventing or frustrating the enforcement purposes of this Agreement, the Offices

may deem it a breach of this Agreement pursuant to Paragraphs 26 through 29.  Nothing herein

shall restrict the Defendant from indemnifying (or otherwise holding harmless) the purchaser or

successor in interest for penalties or other costs arising from any conduct that may have occurred

prior to the date of the transaction, so long as such indemnification does not have the effect of

circumventing or frustrating the enforcement purposes of this Agreement, as determined by the

Offices.

      12.     The Defendant shall cooperate fully with the Offices in any and all matters relating

to the conduct described in this Agreement and Attachment A and any individual or entity referred

to therein, as well as any other conduct under investigation by the Offices at any time during the

Term, until the later of the date upon which all investigations and prosecutions arising out of such

conduct are concluded, or the end of the Term.  At the request of the Offices, the Defendant shall

also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and

agencies, as well as the MDBs, in any investigation of the Defendant, its subsidiaries or its

affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or

any other party, in any and all matters relating to the conduct described in this Agreement and

Attachment A and other conduct under investigation by the Offices at any time during the Term.

The Defendant's cooperation pursuant to this Paragraph is subject to applicable law and

regulations, including data privacy and national security laws, as well as valid claims of attorney-

client privilege or attorney work product doctrine; however, the Defendant must provide to the

Offices a log of any information or cooperation that is not provided based on an assertion of law,

regulation, or privilege, and the Defendant bears the burden of establishing the validity of any such assertion. The Defendant agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

      (a)    The Defendant represents that it has truthfully disclosed all relevant factual information about which the Defendant has any knowledge with respect to the Defendant's activities, those of its subsidiaries and affiliates, and those of its present and former directors, officers, employees, agents, and consultants relating to the conduct described in the Information and Statement of Facts, as well as any other conduct known by the Defendant to be under investigation by the Offices. The Defendant further represents that it shall promptly and truthfully disclose all factual information with respect to its activities, those of its subsidiaries and affiliates, and those of its present and former directors, officers, employees, agents, and consultants related to the conduct described in the Information and Statement of Facts, including any evidence or allegations and internal or external investigations, about which the Defendant gains any knowledge or about which the Offices have inquired or may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Defendant to provide to the Offices, upon request, any document, record or other tangible evidence about which the Offices may inquire of the Defendant, including evidence that is responsive to any requests made prior to the execution of this Agreement.

      (b)    Upon request of the Offices, the Defendant shall designate knowledgeable employees, agents or attorneys to provide to the Offices the information and materials described in Paragraph 12(a) above on behalf of the Defendant. It is further understood that the Defendant must at all times provide complete, truthful, and accurate information.

      (c)    The Defendant shall use its best efforts to make available for interviews or

testimony, as requested by the Offices, present or former officers, directors, employees, agents and consultants of the Defendant.  This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities.   Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Defendant, may have material information regarding the matters under investigation.

(d)     With respect to any information, testimony, documents, records or other tangible evidence provided to the Offices pursuant to this Agreement, the Defendant consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities including United States authorities and those of a foreign government, as well as the MDBs, of such materials as the Offices, in their sole discretion, shall deem appropriate.

13.     In addition to the obligations provided for in Paragraph 12 of the Agreement, during the Term, should the Defendant learn of any evidence or allegation of conduct that may constitute a violation of the FCPA anti-bribery provisions had the conduct occurred within the jurisdiction of the United States, the Defendant shall promptly report such evidence or allegation to the Offices. Thirty (30) days prior to the end of the term of the cooperation obligations provided for in Paragraph 1 of the Agreement, the Defendant, by the Chairman of the Board of Directors of the Defendant and the Chief Financial Officer of Gunvor Group Ltd., will certify to the Offices, in the form of executing the document attached as Attachment E to this Agreement, that the Defendant has met its disclosure obligations pursuant to this Paragraph.  Each certification will be deemed a material statement and representation to the executive branch of the United States for purposes of Title 18, United States Code, Sections 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

14.     The Defendant agrees that any fine or restitution imposed by the Court will be due and payable as specified in Paragraph 22 below, and that any restitution imposed by the Court will be due and payable in accordance with the Court's order.  The Defendant further agrees to pay the Clerk of the Court for the United States District Court for the Eastern District of New York the mandatory special assessment of $400 within ten business days from the date of sentencing.

### The United States' Agreement

15.     In exchange for the guilty plea of the Defendant and the complete fulfillment of all of its obligations under this Agreement, the Offices agree they will not file additional criminal charges against the Defendant or any of its direct or indirect affiliates, parent company, subsidiaries, or joint ventures relating to the conduct described in the Statement of Facts or the Information filed pursuant to this Agreement.  The Offices, however, may use any information related to the conduct described in the Statement of Facts against the Defendant: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. This Agreement does not provide any protection against prosecution for any future conduct by the Defendant or any of its direct or indirect affiliates, subsidiaries, officers, directors, employees, agents or consultants, whether or not disclosed by the Defendant pursuant to the terms of this Agreement.   This Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Defendant.  The Defendant agrees that nothing in this Agreement is intended to release the Defendant from any and all of the Defendant's tax liabilities and reporting obligations for any and all income not properly reported and/or legally or illegally obtained or derived.

13

### Factual Basis

16.     The Defendant is pleading guilty because it is guilty of the charge contained in the Information.  The Defendant admits, agrees, and stipulates that the factual allegations set forth in the Information and the Statement of Facts are true and correct, that it is responsible for the acts of its officers, directors, employees, and agents described in the Information and Statement of Facts, and that the Information and Statement of Facts accurately reflect the Defendant's criminal conduct.  The Defendant stipulates to the admissibility of the Statement of Facts in any proceeding by the Offices, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the attached Statement of Facts at any such proceeding.

### The Defendant's Waiver of Rights, Including the Right to Appeal

17.     Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn.  The Defendant expressly warrants that it has discussed these rules with its counsel and understands them.  Solely to the extent set forth below, the Defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410.  The Defendant agrees, effective as of the date the Court accepts the Defendant's guilty plea, that it will not dispute the Statement of Facts set forth in this Agreement, and that the Statement of Facts shall be admissible against the Defendant in any criminal case involving any of the Offices and the Defendant, as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing.  In addition, the Defendant also agrees not to assert any claim under the Federal Rules of Evidence (including Rule 410 of the Federal Rules of Evidence),

the Federal Rules of Criminal Procedure (including Rule 11 of the Federal Rules of Criminal Procedure), or the United States Sentencing Guidelines (including U.S.S.G. § 1B1.1(a)) that the Statement of Facts set forth in Attachment A to this Agreement should be suppressed or is otherwise inadmissible as evidence (in any form). Specifically, the Defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with the Agreement are admissible against it for any purpose in any U.S. federal criminal proceeding if, even though the Offices have fulfilled all of their obligations under this Agreement and the Court has accepted the guilty plea, the Defendant nevertheless withdraws its guilty plea.

18. The Defendant is satisfied that the Defendant's attorneys have rendered effective assistance. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as provided in this Agreement. The Defendant understands that the rights of criminal defendants include the following:

(a) the right to plead not guilty and to persist in that plea;

(b) the right to a jury trial;

(c) the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings;

(d) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

(e) pursuant to Title 18, United States Code, Section 3742, the right to appeal the sentence imposed.

Nonetheless, the Defendant knowingly waives the right to appeal or collaterally attack the conviction and any sentence within the statutory maximum described below (or the manner in

which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever except those specifically excluded in this Paragraph, in exchange for the concessions made by the Offices in this Agreement. This Agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b). The Defendant also knowingly waives the right to bring any collateral challenge to either the conviction, or the sentence imposed in this case. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a. The Defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution related to the conduct described in the Statement of Facts or the Information, including any prosecution that is not time-barred on the date that this Agreement is signed in the event that: (a) the conviction is later vacated for any reason; (b) the Defendant violates this Agreement; or (c) the plea is later withdrawn, provided such prosecution is brought within one year of any such vacation of conviction, violation of the Agreement, or withdrawal of plea plus the remaining time period of the statute of limitations as of the date that this Agreement is signed. The Defendant further waives the right to raise on appeal or on collateral review any argument that the statutes to which the defendant is pleading guilty is unconstitutional and/or the admitted conduct does not fall within the scope of the statutes. The Offices are free to take any position on appeal or any other post-judgment matter. The parties agree that any challenge to the Defendant's sentence that is not foreclosed by this Paragraph will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. Nothing in the

foregoing waiver of appellate and collateral review rights shall preclude the Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Penalty

19.     The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371 is: (a) a fine of $500,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest (Title 18, United States Code, Sections 371 and 3571(c) and (d)); (b) five years' probation (Title 18, United States Code, Section 3561(c)(1)); (c) a mandatory special assessment of $400 (Title 18, United States Code, Section 3013(a)(2)(B)); (d) restitution in the amount ordered by the Court (Title 18, United States Code, Section 3663); and (e) criminal forfeiture as set forth below in Paragraph 22(c) (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c)). In this case, the parties agree that the gross pecuniary gain resulting from the offense is $384,164,176. Therefore, pursuant to 18 U.S.C. § 3571(d), the maximum fine that may be imposed is twice the gross gain, or approximately $768,328,352.

### Sentencing Recommendation

20.     The parties agree that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court must determine an advisory sentencing guideline range pursuant to the United States Sentencing Guidelines. The Court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in Title 18, United States Code, Section 3553(a). The parties' agreement herein to any guideline sentencing factors constitutes proof of those factors sufficient to satisfy the applicable burden of proof. The

Defendant also understands that if the Court accepts this Agreement, the Court is bound by the sentencing provisions in Paragraph 19.

21.     The Offices and the Defendant agree that a faithful application of the United States Sentencing Guidelines to determine the applicable fine range yields the following analysis:

(a)     The November 1, 2023 Sentencing Guidelines are applicable to this matter.

(b)     Offense Level. Based upon U.S.S.G. § 2C1.1, the total offense level is 46, calculated as follows:

| | | |
|---|---|---|
| (a)(2) Base Offense Level | 12 |
| (b)(1) More than One Bribe | +2 |
| (b)(2) Benefit (More than $250 Million) | +28 |
| (b)(3) Involvement of High-Level Public Official | +4 |
| **TOTAL** | 46 |

(c)     Base Fine. Based upon U.S.S.G. § 8C2.4(a)(2), the base fine is $384,164,176 (the pecuniary gain to the Defendant from the offense)

(d)     Culpability Score. Based upon U.S.S.G. § 8C2.5, the culpability score is 5, calculated as follows:

| | | |
|---|---|---|
| (a) Base Culpability Score | 5 |
| (b)(4) 50 or More Employees and High-Level Personnel | +2 |
| (g)(2) Cooperation, Acceptance | -2 |
| **TOTAL** | 5 |

Calculation of Fine Range:

| | |
|---|---|
| Base Fine | $384,164,176 |
| Multipliers | 1 (min) / 2 (max) |

18

Fine Range          $384,164,176 (min) / $768,328,352 (max)

22.     Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Offices and the Defendant agree that the following represents the appropriate disposition of the case and recommend jointly that the Court impose the following sentence:

(a)     <u>Disposition</u>.  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Offices and the Defendant agree that the appropriate disposition of this case is as set forth above, and agree to recommend jointly that the Court, at a hearing to be scheduled at an agreed upon time, impose a sentence requiring the Defendant to pay a criminal fine, as set forth below.  Specifically, the parties agree, based on the application of the United States Sentencing Guidelines, that the appropriate total criminal fine is $374,560,071 ("Total Criminal Fine").  This reflects a 25 percent discount off the 30th percentile of the Sentencing Guidelines fine range, taking into account the Defendant's cooperation and remediation, as well as its prior history, pursuant to the Corporate Enforcement and Voluntary Self-Disclosure Policy.

(b)     The Offices and the Defendant further agree that the Defendant will pay the United States Treasury $187,280,036, equal to approximately 50 percent of the Total Criminal Fine, no later than ten business days after entry of the judgment by the Court.  The Offices agree to credit the remaining amount of the Total Criminal Fine as follows:

(i)     Up to $93,640,017 of the Total Criminal Fine will be credited against the amount the Defendant pays to authorities in Switzerland—so long as the Defendant pays such amount to Switzerland pursuant to the Defendant's separate resolution with Swiss authorities related to the bribery conduct specified in the Statement of Facts; provided that, in the event the Defendant does not pay the Swiss authorities any part of the $93,640,017 within twelve months after this Agreement is fully executed, the Defendant will be required to pay the full

remaining amount to the United States Treasury within ten business days of the expiration of such twelve-month period; and

      (ii)    Up to $93,640,017 of the Total Criminal Fine will be credited against any amount the Defendant pays to authorities in Ecuador—so long as the Defendant pays such amount to Ecuador pursuant to any separate resolution with Ecuadorian authorities relating to bribery conduct specified in the Statement of Facts; provided that, in the event the Defendant does not pay the Ecuadorian authorities any part of the $93,640,017 within twelve months after this Agreement is fully executed, the Defendant will be required to pay the full remaining amount to the United States Treasury within ten business days of the expiration of such twelve-month period.

The Defendant and the Offices agree that the Total Criminal Fine is appropriate given the facts and circumstances of this case, including the factors described in Paragraph 7. The Total Criminal Fine is final and shall not be refunded. The Defendant shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to any fine, penalty, forfeiture, or disgorgement amounts that Defendant pays pursuant to the Agreement or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in Attachment A. The Defendant further acknowledges that no tax deduction may be sought in connection with the payment of any part of the Total Criminal Fine. The Offices believe that a disposition that includes a fine of $374,560,071 is appropriate based on the factors outlined in Paragraph 7 of the Agreement and those in 18 U.S.C. § 3553(a).

      (c)    <u>Forfeiture</u>. The Defendant acknowledges that it obtained and/or acquired property that is subject to forfeiture as a result of its violation of 18 U.S.C. § 371 and 15 U.S.C. § 78dd-3, as alleged in the Information. The Defendant consents to the entry of a forfeiture money

judgment in the amount of two hundred eighty-seven million, one hundred thirty-eight thousand, four hundred forty-four dollars ($287,138,444) (the "Forfeiture Money Judgment"). The Defendant agrees that the amount of the Forfeiture Money Judgment and any payments toward the Forfeiture Money Judgment represent property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of its violation of 18 U.S.C. § 371 and 15 U.S.C. § 78dd-3, and thus are forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), in any administrative and/or judicial (civil or criminal) proceeding(s) at the Offices' exclusive discretion. The Defendant consents to the entry of an Order of Forfeiture, in the form annexed hereto as Attachment G, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, imposing the Forfeiture Money Judgment. The Forfeiture Money Judgment shall be paid in full no later than ten (10) business days after entry of the judgment by the Court. If the Defendant fails to pay any portion of the Forfeiture Money Judgment as set forth above, Defendant acknowledges that the failure to pay is based on an act or omission of the Defendant that resulted in the unavailability of such portion of the Forfeiture Money Judgment consistent with 21 U.S.C. § 853(p)(1)(A)-(E). All payments made toward the Forfeiture Money Judgment shall be made payable to the United States Marshals Service by wire transfer or other means pursuant to written instructions provided by the Offices. The Defendant consents to the restraint of all payments made toward the Forfeiture Money Judgment. The Defendant also waives all statutory deadlines, including but not limited to deadlines set forth in 18 U.S.C. § 983. The Defendant further agrees that the entry and payment of the Forfeiture Money Judgment are not to be considered a payment of a fine, penalty, restitution loss amount, or any income taxes that may be due, and shall survive bankruptcy or any sale, merger, transfer of business operations or change in corporate form, as set forth in paragraph 11 of this Agreement.

(d)     Mandatory Special Assessment.  The Defendant shall pay to the Clerk of the Court for the United States District Court for the Eastern District of New York within ten days of the date of sentencing the mandatory special assessment of $400.

23.     This Agreement is presented to the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C). The Defendant understands that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement; (b) advise the Defendant's counsel that the Court is not required to follow the Agreement and afford the Defendant the opportunity to withdraw its plea; and (c) advise the Defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendant than the Agreement contemplated.  The Defendant further understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement.

24.     The Defendant and the Offices waive the preparation of a Pre-Sentence Investigation Report ("PSR") and intend to seek a sentencing by the Court immediately following the Rule 11 hearing in the absence of a PSR.  The Defendant understands that the decision whether to proceed with the sentencing proceeding without a PSR is exclusively that of the Court.  In the event the Court directs the preparation of a PSR, the Offices will fully inform the preparer of the PSR and the Court of the facts and law related to the Defendant's case.

### Enhanced Corporate Compliance Reporting

25.     As described in Paragraph 8(j), the Defendant agrees that it will report to the Offices annually during the Term regarding remediation and maintenance of the compliance measures described in Attachment C.  This reporting will be conducted in accordance with Attachment D.

**Breach of Agreement**

26.     If the Defendant: (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to cooperate as set forth in Paragraph 12 of this Agreement; (d) fails to implement a compliance program as set forth in Paragraphs 9 and 10 of this Agreement and Attachment C; (e) fails to satisfy the enhanced compliance reporting requirements set forth in Paragraph 25 of this Agreement and Attachment D; (f) commits any acts that, had they occurred within the jurisdictional reach of the FCPA, would be a violation of the FCPA; or (g) otherwise fails specifically to perform or to fulfill completely each of the Defendant's obligations under the Agreement, regardless of whether the Offices become aware of such a breach after the Term, the Defendant shall thereafter be subject to prosecution for any federal criminal violation of which the Offices have knowledge, including, but not limited to, the charge in the Information described in Paragraph 3, which may be pursued by the Offices in the United States District Court for the Eastern District of New York or any other appropriate venue.  Determination of whether the Defendant has breached the Agreement and whether to pursue prosecution of the Defendant shall be in the Offices' sole discretion.  Any such prosecution may be premised on information provided by the Defendant or its personnel.  Any such prosecution relating to the conduct described in the Information and the attached Statement of Facts or relating to conduct known to the Offices prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Defendant, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term of the Agreement plus one year.  Thus, by signing this Agreement, the Defendant agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing

of this Agreement shall be tolled for the Term of the Agreement plus one (1) year.  The Defendant

gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

speedy trial claim with respect to any such prosecution or action, except to the extent that such

defenses existed as of the date of the signing of this Agreement.  In addition, the Defendant agrees

that the statute of limitations as to any violation of federal law that occurs during the term of the

cooperation obligations provided for in Paragraph 12 of the Agreement will be tolled from the date

upon which the violation occurs until the earlier of the date upon which the Offices are made aware

of the violation or the duration of the Term plus five (5) years, and that this period shall be excluded

from any calculation of time for purposes of the application of the statute of limitations.

27.     In the event the Offices determine that the Defendant has breached this Agreement,

the Offices agree to provide the Defendant with written notice of such breach prior to instituting

any prosecution resulting from such breach.  Within thirty (30) days of receipt of such notice, the

Defendant shall have the opportunity to respond to the Offices in writing to explain the nature and

circumstances of such breach, as well as the actions the Defendant has taken to address and

remediate the situation, which explanation the Offices shall consider in determining whether to

pursue prosecution of the Defendant.

28.     In the event that the Offices determine that the Defendant has breached this

Agreement: (a) all statements made by or on behalf of the Defendant to the Offices or to the Court,

including the Information and the Statement of Facts, and any testimony given by the Defendant

before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or

subsequent to this Agreement, and any leads derived from such statements or testimony, shall be

admissible in evidence in any and all criminal proceedings brought by the Offices against the

Defendant; and (b) the Defendant shall not assert any claim under the United States Constitution,

24

Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Defendant prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Defendant, will be imputed to the Defendant for the purpose of determining whether the Defendant has violated any provision of this Agreement shall be in the sole discretion of the Offices.

29.      The Defendant acknowledges that the Offices have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Defendant breaches this Agreement and this matter proceeds to judgment.   The Defendant further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

**Public Statements by the Defendant**

30.      The Defendant expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Defendant make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendant set forth above or the facts described in the Information and Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Defendant described below, constitute a breach of this Agreement, and the Defendant thereafter shall be subject to prosecution as set forth in Paragraphs 26 through 29 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Information or Statement of Facts will be imputed to the Defendant for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Offices. If the Offices determine

that a public statement by any such person contradicts in whole or in part a statement contained in the Information or Statement of Facts, the Offices shall so notify the Defendant, and the Defendant may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification.  The Defendant shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Information and Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Information or Statement of Facts.  This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Defendant.

31.     The Defendant agrees that if it or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Defendant shall first consult the Offices to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Offices and the Defendant; and (b) whether the Offices have any objection to the release or statement.

## Complete Agreement

32.     This document, including its attachments, states the full extent of the Agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

**AGREED:**

**FOR GUNVOR S.A.:**

By: _____      Date: ___12/2./2?___
Jean-Baptiste Leclercq
Chief Legal Officer, Gunvor S.A.

By: _____      Date: ___12/2./2?___
Mark A. Racanelli
Rebecca Mermelstein
O'Melveny and Myers LLP
Counsel for Gunvor S.A.


**FOR THE U.S. DEPARTMENT OF JUSTICE:**

GLENN S. LEON                                      BREON PEACE
Chief, Fraud Section                               United States Attorney
Criminal Division                                  Eastern District of New York
U.S. Department of Justice

By: _____      By: _____
Clayton P. Solomon, Trial Attorney             Jonathan P. Lax
Derek J. Ettinger, Assistant Chief             Nick M. Axelrod
Jonathan P. Robell, Assistant Chief            Assistant United States Attorneys


MARGARET A. MOESER
Acting Chief, Money Laundering and
    Asset Recovery Section
Criminal Division
U.S. Department of Justice

By: _____      Date: ___12/21/2023___
Adam Schwartz, Deputy Chief
D. Hunter Smith, Trial Attorney

27