1

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
 2      - - - - - - - - - - - - - X
                                   :   24-CR-85(ENV)
 3      UNITED STATES OF AMERICA,  :
                                   :
 4              Plaintiff,         :   United States Courthouse
                                   :   Brooklyn, New York
 5          -against-             :
                                   :
 6      GUNVOR, S.A.,             :   March 1, 2024
                                   :   11:00 a.m.
 7              Defendant.         :
                                   :
 8      - - - - - - - - - - - - - X
```

       TRANSCRIPT OF CRIMINAL CAUSE FOR PLEA AND SENTENCING
              BEFORE THE HONORABLE ERIC N. VITALIANO
                  UNITED STATES DISTRICT JUDGE


                    A P P E A R A N C E S :

For the Government:   BREON PEACE, ESQ.
                      United States Attorney
                      Eastern District of New York
                         271-A Cadman Plaza East
                         Brooklyn, New York 11201
                      BY: JONATHAN LAX, ESQ.
                          NICHOLAS AXELROD, ESQ.
                          JONATHAN ROBELL, ESQ.
                          Assistant United States Attorneys

For the Defendant:    O'MELVENY & MYERS LLP
                         Times Square Tower
                         7 Times Square
                         New York, New York 10036
                      BY: MARK RACANELLI, ESQ.
                          REBECCA MERMELSTEIN, ESQ.

Court Reporter:       Kristi Cruz, RMR, CRR, RPR
                      Official Court Reporter
                      E-mail: kristi.edny@gmail.com

Proceedings recorded by computerized stenography.  Transcript produced by
Computer-Aided Transcription.


                    *      *      *      *      *

*Proceedings*                                                            2

1              (In open court.)

2              THE COURTROOM DEPUTY:  Court is now open.

3              The Honorable Eric N. Vitaliano presiding.  Case

4    on calendar is USA versus Gunvor, case number 24-CR-85, on

5    for guilty plea and sentence.

6              Will the attorneys please note their appearance,

7    beginning with Government counsel.

8              MR. LAX:  Good morning, Your Honor.

9              Jonathan Lax, Nicholas Axelrod, and John Robell

10   here on behalf of the Government.

11             THE COURT:  Good morning, Mr. Lax, and your entire

12   table.

13             MR. RACANELLI:  Mark Racanelli and Rebecca

14   Mermelstein with O'Melveny & Myers, representing Gunvor,

15   S.A.

16             Your Honor, good morning.

17             We're here with the Chief Legal Officer of Gunvor

18   S.A., Jean-Baptiste Leclercq.

19             THE COURT:  And good morning to you,

20   Mr. Racanelli, and your table.

21             And certainly Mr. Leclercq, welcome as well.

22             THE COURTROOM DEPUTY:  Counsel for both sides are

23   present, and the representative for Gunvor.

24             THE COURT:  All right.  Be seated, please.

25             Mr. Lax, I guess if you can catch the record up to

*Proceedings*                                                   3

1    what it is we think we are doing this morning.

2              MR. LAX:  Yes.

3              THE COURT:  And then we will all hope that we will

4    achieve it.

5              MR. LAX:  Yes, Your Honor.

6              THE COURT:  You did a good job the last time, so

7    you have something to shoot for.

8              MR. LAX:  Hopefully we'll hit the mark.

9              So we're here today, as the Court knows, for the

10   defendant Gunvor, S.A. to waive indictment and plead guilty

11   pursuant to a plea agreement, and then, if the Court

12   permits, to proceed to sentencing as well.  That's the high

13   level order of procedure here.

14             THE COURT:  All right.

15             So why don't we begin with swearing the witness,

16   because eventually Mr. Leclercq's going to have to provide

17   the sworn testimony.  So we might as well get that done at

18   the start so we don't lose track of it.  I'll have the

19   Deputy Clerk do that.

20             (Mr. Leclercq sworn.)

21             THE COURT:  All right.

22             Mr. Leclercq, I'm going to at some point be asking

23   you questions.  First thing that I want to establish on the

24   record with you is that Mr. Racanelli and Ms. Mermelstein

25   are your lawyers and the lawyers for Gunvor in this case.

*Proceedings*                                                        4

1          MR. LECLERCQ:  Yes, they are, Your Honor.

2          THE COURT:  That means that at this point, if you

3    need to speak privately with them during the proceedings

4    this morning, please let me know and I will permit you to do

5    so without any penalty.

6          Do you understand that?

7          MR. LECLERCQ:  Understood.  Thank you, Your Honor.

8          THE COURT:  You're welcome.

9          Now, also, you've now taken an oath, and during

10   the course of the hearing there will be various questions

11   asked of you.  What is important to understand is that if

12   you personally answer any of these questions falsely,

13   regardless of who might ask the question during the hearing,

14   then those answers can be used in a separate prosecution for

15   the crimes of perjury or making a false statement against

16   you personally.

17         Do you understand that?

18         MR. LECLERCQ:  I understand, Your Honor.

19         THE COURT:  All right.

20         So now, Mr. Lax, this is the rare proceeding on to

21   Rule 11, under subsection C, where the Court is involved in

22   the sentencing as part of the plea itself.  Please walk us

23   through how we're going to get from point A to point B, and

24   then we will then touch base again with Mr. Leclercq.

25         MR. LAX:  Yes, Your Honor.

1          So I think we would proceed really just as a

2    normal waiver of indictment and plea proceeding.  We've

3    prepared the Waiver of Indictment form.  And because it's a

4    corporate matter, there's also a separate disclosure

5    statement pursuant to Rule 12.4, and those have been

6    prepared for the Court.

7          If the Court accepts the plea and the recommended

8    sentence pursuant to Rule 11(c)(1)(C), that's one option.

9    Of course if the Court rejects it, then the company will

10   have an opportunity to withdraw the plea, and we'll

11   essentially go back to where we are starting right now.

12          THE COURT:  All right.  I want to touch base now

13   with Mr. Leclercq.

14          There is a corporate resolution, as I understand

15   it from the opening statement by counsel, that you are the

16   Chief Legal Officer of Gunvor?

17          MR. LECLERCQ:  I am, Your Honor.

18          THE COURT:  And were you present at the board

19   meeting where the corporate resolution was adopted that

20   authorized the acceptance of the plea and your designation

21   as the representative to appear in court in connection with

22   the plea proceedings?

23          MR. LECLERCQ:  I was, yes.

24          THE COURT:  And were you physically present or

25   were you present by some form of communication?

*Proceedings*                                                          6

1       MR. LECLERCQ:  No, I was physically present, Your

2   Honor.

3       THE COURT:  All right.  Now, the proposed sentence

4   itself, was that formally presented to the board?

5       MR. LECLERCQ:  It was.

6       THE COURT:  And was it discussed in your presence?

7       MR. LECLERCQ:  It was, yes, Your Honor.

8       THE COURT:  And what action did the board take?

9       MR. LECLERCQ:  It was discussed and explained by

10  the legal team which is here around me, discussing the

11  consequences, and it has decided to proceed.  At that time I

12  was appointed by a resolution of the Board of Directors as

13  the corporate representative for Gunvor, S.A. for the

14  purpose of those proceedings, Your Honor.

15      THE COURT:  And in those discussions before the

16  board adopted the resolutions, was there a discussion of the

17  corporation's rights under American law?

18      MR. LECLERCQ:  Yes.

19      THE COURT:  And the decision to adopt the

20  resolution was after those discussions were held so that the

21  board members, when they acted on it, were aware of what

22  defenses and rights they might otherwise have under American

23  law?

24      MR. LECLERCQ:  Yes, indeed.  Exactly, Your Honor.

25      THE COURT:  All right.

*Proceedings*                                                    7

1          Because I don't want to do it multiple times,

2   Mr. Lax, so we'll catch up with the actual details of the

3   proposed sentence later on in the proceedings this morning.

4          Now, Mr. Leclercq, you are present before the

5   Court in a traditional way, but in a shorthand way at the

6   same time.  I want to inquire on various topics to assure

7   myself that the plea that you are about to offer is a valid

8   one so that there are certain touchstones.

9          First, it might not be viewed as something that's

10  important, but the Court considers it important, and that is

11  your ability physically at this point to offer the plea on

12  behalf of the corporate defendant, and that begins with the

13  following questions:

14          In the last 24 hours, have you taken any narcotic

15  drugs?

16          MR. LECLERCQ:  No, Your Honor.

17          THE COURT:  In the last 24 hours, have you taken

18  medications of any kind?

19          MR. LECLERCQ:  No, Your Honor.

20          THE COURT:  In the last 24 hours, have you taken

21  any alcoholic beverages?

22          MR. LECLERCQ:  I had some wine at dinner last

23  night.

24          THE COURT:  Last night.

25          As you appear in court this morning, is your mind

*Proceedings*                                                              8

1    clear?

2              MR. LECLERCQ:  Yes, it is, Your Honor.

3              THE COURT:  And you understand the circumstances

4    and what's going on around you in the courtroom?

5              MR. LECLERCQ:  I do.

6              THE COURT:  Now, Mr. Racanelli, were you present

7    also at the adoption of the board resolution?

8              MR. RACANELLI:  I was, Your Honor.

9              THE COURT:  And at the time that the resolution

10   was adopted, were you providing legal advice to the

11   corporate board?

12             MR. RACANELLI:  Correct, Your Honor.

13             THE COURT:  And on the basis of your conversations

14   and dealings with the board, do you believe that the board

15   understood the nature of the proceedings that we're about to

16   conduct now?

17             MR. RACANELLI:  Definitely, Your Honor.  We went

18   over the nature of the Plea Agreement, the specifics of the

19   agreement, what would be required of the company, the rights

20   it had, the rights it would be giving up, as well as the

21   sentencing guidelines and the specific sentences.

22             THE COURT:  You covered all of those with the

23   board?

24             MR. RACANELLI:  Yes, Your Honor.

25             THE COURT:  All right.

1          Now, one of those rights, and we will go to that

2     next, Mr. Leclercq, is the right to proceed by way of grand

3     jury indictment.  Ordinarily, a felony charge of this kind

4     would be prosecuted pursuant to an indictment of a grand

5     jury, and there would be a right to proceed that way, but

6     it's a right that is waivable.

7          Had the board considered the issue of whether or

8     not they should waive grand jury indictment?

9          MR. LECLERCQ:  It did, yes, Your Honor.

10         THE COURT:  Now I'm going to go over that briefly

11    in open court to make sure that this is your understanding

12    and it matches my understanding, because ordinarily, when we

13    speak to a grand jury indictment, you have to know what a

14    grand jury is.

15         A grand jury is a body of citizens that is

16    selected in various federal district courts.  It's a body

17    that consists of at least 16 but not more than 23 people,

18    and at least 12 of those who serve on the grand jury would

19    have to vote to indict a defendant for the prosecution to

20    proceed.

21         Ordinarily what happens is that the Government

22    would present evidence to the grand jury, and if the grand

23    jury were to conclude that there was sufficient evidence to

24    believe that certain individual or a corporation had

25    committed an offense, then the grand jury would vote to

1    indict that person and the prosecution would begin.  We

2    understand that Gunvor has decided to waive that process.

3            So the question is:  What happens if you decided

4    now, on behalf of the corporation, that you were not going

5    to proceed that way?  Well, then the Government would have

6    the option of presenting evidence to a grand jury and

7    indicting the corporation.  Once they presented that

8    evidence, a grand jury might or might not indict the

9    corporation.

10           But this is clear:  If you do waive, on behalf of

11   the corporation, grand jury indictment and proceed by way of

12   information, we will proceed just as if the grand jury had

13   indicted the corporation.

14           Do you understand that?

15           MR. LECLERCQ:  Yes, Your Honor.

16           THE COURT:  And it is your desire to waive grand

17   jury indictment and proceed by way of information?

18           MR. LECLERCQ:  Yes, Your Honor.

19           THE COURT:  Mr. Racanelli, do you know of any

20   reason why the corporation should not proceed by way of

21   information?

22           MR. RACANELLI:  No, Your Honor.

23           THE COURT:  Now, I understand from what Mr. Lax

24   said that somewhere there is a waiver form.  Is that waiver

25   form of the kind that I must execute?

*Proceedings*                                              11

1          MR. LAX:  Yes, Your Honor.  It's the standard

2    waiver form.

3          THE COURT:  Okay.  It's the standard waiver form.

4          And has the Deputy Clerk received the standard

5    waiver form?

6          (Pause in proceedings.)

7          THE COURT:  The Court has now executed the waiver.

8          There is also the Corporate Resolution, and I'm

9    discussing with the clerk and I'll invite Mr. Lax's

10   suggestion here, should that be affixed to anything?  And if

11   so, to which of the documents?  And if not --

12         MR. LAX:  Your Honor, the disclosure statement, I

13   think it only needs to be filed.  It doesn't have to be

14   attached to a particular document.

15         THE COURT:  Okay.

16         So the Court now has executed the Waiver of

17   Indictment form and returned it to you, Mr. Leclercq, on

18   behalf of the corporation.

19         As I indicated at the top of the hearing, these

20   questions are designed to assure the Court that Gunvor's

21   decision to plead guilty to the one count in the information

22   is knowing and voluntary.

23         Also, in connection with that, the fact that I've

24   now accepted the corporation's Waiver of Indictment and its

25   willingness to proceed by way of information does not mean

*Proceedings*                                                    12

1    that the corporation is obligated to plead guilty to the

2    information.  It only means that we are proceeding by way of

3    information and not indictment.

4              That being said, we understand, of course, that

5    under the Rule 11 plea allocution, that the corporation

6    intends to plead guilty, and this is where we begin the

7    inquiry to assure that it is a valid plea.

8              The first and most important thing to understand

9    is, even if the corporation is guilty, it doesn't have to

10   plead guilty.  It remains the Government's obligation to

11   establish the guilt of a defendant beyond a reasonable

12   doubt.  And if the Government prosecutor does not or cannot

13   meet his burden of proof, then the jury would be obligated

14   to find that defendant not guilty even if the defendant is

15   guilty.

16             So it remains a choice for the corporation to

17   either plead guilty or not guilty to the information that is

18   now before the Court.

19             Do you understand that?

20             MR. LECLERCQ:  Yes, Your Honor.

21             THE COURT:  If you had pled not guilty, you would

22   be entitled to a speedy and public trial on one count in the

23   information, with the assistance of counsel who is

24   presumably in this courtroom, before a jury.

25             Do you understand that?

1          MR. LECLERCQ:  Yes, I do, Your Honor.

2          THE COURT:  But by pleading guilty, you give up

3     that right.  The Government would no longer have to

4     establish your guilt beyond a reasonable doubt.

5          Do you understand that?

6          MR. LECLERCQ:  Yes, Your Honor.

7          THE COURT:  Now, if you had pled not guilty and we

8     proceeded to a trial, witnesses for the Government would

9     have to come into open court and testify before you, and

10    you'd go to trial with the assistance of counsel on the

11    charge contained in the information.  Your counsel could

12    cross-examine the witnesses who testify against the

13    corporation, could object to evidence offered at the trial,

14    could raise defenses on behalf of the corporation, and could

15    even compel witnesses to testify who did not want to

16    testify.

17         Do you understand that?

18         MR. LECLERCQ:  Yes, Your Honor.

19         THE COURT:  But by pleading guilty, the

20    corporation gives up its right to confront the witnesses, it

21    gives up its right to raise defenses, and it gives up its

22    right to call witnesses to testify on its own behalf.

23         Do you understand that?

24         MR. LECLERCQ:  Yes, Your Honor.

25         THE COURT:  Now, if, in fact, you do plead guilty,

1   you would be giving up all of these Constitutional rights

2   that we have just discussed.  There will be no trial of any

3   kind.  I will simply enter a judgment of conviction against

4   the corporation on the strength of the guilty plea.

5           Do you understand that?

6           MR. LECLERCQ:  Yes, I do, Your Honor.

7           THE COURT:  Now, Mr. Lax, in connection with this

8   plea, is there an appellate waiver in the plea of any kind?

9           MR. LAX:  There is, Your Honor.  It's contained

10  within paragraphs 17 and 18 of the Plea Agreement, and it's

11  operative so long as the Court imposes a sentence anywhere

12  within the statutory maximum.

13          THE COURT:  So he gives up basically all rights to

14  appeal?

15          MR. LAX:  Including collateral attacks, Your

16  Honor, yes.

17          THE COURT:  Okay.

18          So is it fair to say that there is no difference

19  between a trial before a jury and this plea from an

20  appellate review perspective?  It would be just the

21  opposite, that by entering into this agreement, the

22  corporation is giving up all of its rights to appeal?

23          MR. LAX:  Essentially, yes, Your Honor.

24          THE COURT:  And you understand that?

25          MR. LECLERCQ:  Yes, I do, Your Honor.

*Proceedings*                                                    15

1          THE COURT:  All right.

2          So at this point why don't you, Mr. Lax, walk us

3    through exactly what is in the Plea Agreement.  I don't

4    think we've marked it yet as an exhibit, but we should

5    probably do that first.

6          MR. LAX:  I'm happy to hand up a copy.

7          THE COURT:  Does that have signatures on it,

8    Mr. Lax?

9          MR. LAX:  It should, Your Honor.  I'll double

10   check.

11         Yes.

12         THE COURT:  We usually mark --

13         MR. LAX:  It does.

14         THE COURT:  We mark the original.  We'll mark the

15   originals Court Exhibit 1.

16         MR. LAX:  It is the agreement and the attachments

17   and a copy of the information, as well, a physical copy of

18   that.

19         (Court Exhibit 1 marked and received in evidence.)

20         THE COURT:  The Deputy Clerk will present the

21   exhibit to the parties.

22         First on the defense side, Mr. Leclercq, with

23   respect to that Plea Agreement, is that your signature on

24   the Plea Agreement?

25         MR. LECLERCQ:  Yes, it is, Your Honor.

*Proceedings*                                                    16

1          THE COURT:  And is that the Plea Agreement that

2    was presented to the board and the board approved by

3    corporate resolution?

4          MR. LECLERCQ:  Yes, it is, Your Honor.

5          THE COURT:  And is that the Plea Agreement that

6    the board authorized you to come to court today and plead

7    guilty pursuant to?

8          MR. LECLERCQ:  Yes, Your Honor.

9          THE COURT:  And, Mr. Racanelli, did you sign that

10   as well?

11         MR. RACANELLI:  I did, Your Honor.

12         THE COURT:  And while we're there, there is a

13   corporate resolution.  Whose signatures are on that,

14   Mr. Racanelli?

15         MR. RACANELLI:  Your Honor, the corporate

16   resolution is Attachment B, as in boy, to the Plea Agreement

17   which is dated December 21, 2023, and that contains the

18   signatures of the three board members that Mr. Leclercq and

19   I presented the terms of the plea to.

20         THE COURT:  And is your signature on it, as well?

21         MR. RACANELLI:  No, Your Honor.  Just the board

22   members.

23         THE COURT:  Just the board members.

24         And is that the document that authorized

25   Mr. Leclercq to plead guilty on behalf of the Gunvor?

*Proceedings*                                                17

1          MR. RACANELLI:  It is, Your Honor.

2          THE COURT:  Now, on the Government's side, who

3     signed the Plea Agreement?

4          MR. LAX:  Yes, Your Honor.

5          It's fully executed by myself, Jonathan Robell,

6     and Hunter Smith, all at the Department of Justice.

7          THE COURT:  All signed.

8          Now that we've identified that, Mr. Lax, earlier I

9     had indicated we would try to do this only once.  We may end

10    up doing it twice, but certainly this is the first time.

11         If we would now go over the specific consequences

12    of the entry of the plea of guilty to this one count of the

13    information.

14         MR. LAX:  So the statutory maximum consequences

15    are set forth in the plea agreement in paragraph 19.  They

16    include a fine of $500,000, or twice the gross pecuniary

17    gain or gross pecuniary loss resulting from the offense,

18    whichever is greater.  In this case, that would be twice the

19    gain.  So here, the gain has been calculated as

20    $384,164,176.  So twice that would make the maximum fine

21    $768,328,352.

22         The maximum also includes a five-year term of

23    probation, a mandatory special assessment of $400,

24    restitution, if any, as ordered by the Court, as well as

25    criminal forfeiture.  And there is an agreed-upon forfeiture

*Proceedings*                                        18

1   amount as part of the agreement, as well, and the forfeiture

2   amount is $287,133,444.

3          THE COURT:  Now, Mr. Leclercq, is that your

4   understanding, that that is the maximum punishment that

5   could be imposed as a result of Gunvor's guilty plea?

6          MR. LECLERCQ:  Yes, Your Honor.

7          THE COURT:  Now, this being a plea to a set

8   sentence, if you would now, Mr. Lax, go over with us the

9   specific sentence that the Government is recommending that

10  the Court impose now that we know what the maximum is.

11         MR. LAX:  Yes, Your Honor.

12         So in terms of the criminal fine, the agreed-upon

13  recommended amount is $374,560,071.  The forfeiture amount

14  is $287,138,444.  Plus the $400 special assessment.

15         THE COURT:  And the five-year probation, does that

16  apply as well?

17         MR. LAX:  It's part of the maximum, Your Honor,

18  but the term of the agreement is a three-year term.  There

19  is no recommendation for a term of probation in the

20  agreement.

21         THE COURT:  All right.

22         Now, in our preliminary review of the documents

23  that were sent in advance of sentencing, there was some

24  sharing with both the Swiss government and the Government of

25  Ecuador, I believe?

*Proceedings*                                                    19

1          MR. LAX:  Yes, Your Honor.

2          So with respect to the fine, 50 percent of the

3   total fine is due to the United States within 10 days of

4   sentencing, and then the balance of the fine is due within

5   12 months and 10 days.  Part of the agreement provides for

6   credit to that balance of up to $93,640,017 paid to

7   authorities in Switzerland, or paid to authorities in

8   Ecuador; meaning 93 million, approximately, to both.  So it

9   could be the full, essentially, remaining 50 percent if

10  those balances are paid within 12 months.

11         THE COURT:  And if they're not, then the full

12  amount is paid to the Government of the United States?

13         MR. LAX:  Exactly.  Whatever balance is remaining

14  is paid to the United States essentially one year and ten

15  days from sentencing, from today.

16         THE COURT:  Now, on the criminal forfeiture,

17  what's the payment schedule there?

18         MR. LAX:  All criminal forfeiture is to be paid

19  within 10 days of today.

20         THE COURT:  Today, or the date of judgment?

21         MR. LAX:  Yes, Your Honor.

22         THE COURT:  Is that true of the $400 special

23  assessment?

24         MR. LAX:  It is, Your Honor.

25         THE COURT:  Is there a provision for reporting, as

1    well?

2              MR. LAX:  Yes, Your Honor.  So there are a number

3    of provisions in the agreement itself.

4              The company will continue to implement appropriate

5    corporate compliance and ethics programs.  That's set forth

6    in paragraphs 9 and 10 of the agreement, and also in

7    attachment C to the agreement.  Of course the company will

8    abide by all terms of the agreement, and that is enumerated

9    in paragraph 8.

10             The company will also regularly report on

11   corporate compliance and remedial measures.  That's set

12   forth in paragraph 25 and attached D to the agreement.  The

13   defendant company will also cooperate fully with the

14   Government and report certain allegations of misconduct.

15   That's in paragraphs 12 through 13 of the agreement.

16             I think those are the key reporting provisions.

17             THE COURT:  Mr. Leclercq, is that your

18   understanding of the sentence that would be imposed by the

19   Court?

20             MR. LECLERCQ:  Yes, Your Honor.

21             THE COURT:  Mr. Racanelli, is that also your

22   understanding?

23             MR. RACANELLI:  It is, Your Honor, with one very

24   small quibble:  That the fine and the forfeiture is due 10

25   business days after judgment.  But otherwise, it's correct.

1          THE COURT:  All right.

2          There is a right to restitution.  I have not seen

3    any, at this point, claim made by a victim.

4          Is that anticipated as forthcoming, Mr. Lax?

5          MR. LAX:  No, Your Honor.  We've not identified

6    any victims, so we don't anticipate restitution being a

7    component of the judgment.

8          THE COURT:  All right.  Thank you.

9          Now, that being the case, either Mr. Racanelli or

10   Mr. Leclercq, do you have any questions for me about the

11   proposed sentence or anything that we've done thus far in

12   the hearing?

13         MR. RACANELLI:  I do not, Your Honor.

14         MR. LECLERCQ:  I do not, Your Honor.  Thank you.

15         THE COURT:  What I want to do, then, next is to

16   proceed directly to the allocution of the plea itself.

17         Mr. Leclercq, it has been recommended by both the

18   defense and the Government that this fixed sentence be the

19   sentence that the Court imposes.  The first thing we must

20   attend to now is to actually receive the plea of Gunvor with

21   respect to the charge.

22         So with respect to the one count in the

23   information, what is Gunvor's plea, guilty or not guilty,

24   Mr. Leclercq?

25         MR. LECLERCQ:  Guilty, Your Honor.

1          THE COURT:  Is the corporation, Mr. Leclercq,

2    pleading guilty voluntarily and of its own free will?

3          MR. LECLERCQ:  Yes, Your Honor.

4          THE COURT:  Has anyone threatened or forced the

5    corporation to plead guilty?

6          MR. LECLERCQ:  No, Your Honor.

7          THE COURT:  And other than the proposed sentence

8    that has just been articulated on the record by Mr. Lax, has

9    anyone made any promises to the corporation to get it to

10   plead guilty or that there would be something other than the

11   sentence that Mr. Lax has just set forth on the record?

12         MR. LECLERCQ:  No, Your Honor.

13         THE COURT:  Now, the last item is to establish on

14   the record that there is actually a factual basis for the

15   plea that the corporation has entered, and that is done by

16   setting forth on the record maybe a narrative statement that

17   you may have already prepared that tells me what it is that

18   the corporation says that it did that leads it to plead

19   guilty to this charge.

20         MR. LECLERCQ:  Gunvor, S.A. admits to the facts

21   contained in the Statement of Facts, which I believe is in

22   Attachment A of the Plea Agreement.  And Gunvor further

23   admits that between 2011 and 2020, the company, through its

24   former employees and agents, knowingly and willfully joined

25   a conspiracy to violate the FCPA by making payments to

*Proceedings*                                              23

1   intermediaries with the intent that a portion of those

2   payments will be used to bribe Ecuadorian government

3   officials to secure and mention business with Ecuador

4   state-owned oil company, Petroecuador.

5           THE COURT:  Mr. Lax, is the Government satisfied

6   with the allocution?

7           MR. LAX:  Yes, Your Honor.  Certainly in light of

8   the stipulated statement of facts in Attachment A.

9           THE COURT:  Then the Court is satisfied, as well.

10          Mr. Leclercq, I find first that the board has, in

11  fact, adopted a corporate resolution that authorizes the

12  entry of a plea of guilty to the charge in the information,

13  that the board properly authorized you to first waive the

14  grand jury indictment and proceed by way of information, and

15  that the board had properly authorized you to act as its

16  representative here at the Rule 11 plea and sentencing.

17          The Court finds that the corporation understands

18  its rights, that the corporation understood the maximum

19  sentence and fine that could be imposed by pleading guilty,

20  that the decision to waive its rights and plead guilty was a

21  knowing decision, and that it was also a voluntary decision,

22  and on the basis of the statement of facts that's annexed to

23  the Plea Agreement.  And on the statement that you've made

24  under oath here in open court, I find that there is, in

25  fact, a valid, factual basis to support the entry of the

*Proceedings*                                                    24

1   plea of guilty to the one count of the information, and the

2   Court accepts that plea of guilty to that one count of the

3   information and is now ready to impose sentence because the

4   Court finds that the sentence is a just one.

5            Though I do want to ask for further clarification

6   with respect to the fine, and perhaps, Mr. Lax, can you help

7   on this as well.

8            We did talk about the maximum fine.  How was it

9   determined where in the range the fine should fall in this

10  case?

11           MR. LAX:  Yes, Your Honor.

12           So it began with the guidelines.  So the offense

13  level that was calculated was a level of 46.  The base fine

14  was the gross gain, which was $384,164,176.  We calculated a

15  culpability score of 5.  All of which provided for a fine

16  range of $384,164,176 as the minimum, and the maximum being

17  two times that, approximately $768 million.  The criminal

18  fine that the parties negotiated and agreed and are

19  recommending to the Court is, again, approximately

20  374 million, and that was 25 percent off of the 30th

21  percentile within the guidelines range.

22           THE COURT:  The culpability score, is that a

23  reference to the American Bar Association process?

24           MR. LAX:  The culpability score is set forth in

25  paragraph 21(D), and the multipliers are 1 and 2.

*Proceedings*                                                    25

1      THE COURT:  And, Mr. Racanelli, as defense

2  counsel, were you involved in those computations as well?

3      MR. RACANELLI:  Yes, Your Honor.  As Mr. Lax

4  mentioned, this was a negotiated resolution, and I and

5  Ms. Mermelstein were involved in that process.

6      THE COURT:  Now, was there any accounting done by

7  the corporation itself as to the effect and impact on the

8  corporation?

9      MR. RACANELLI:  Yes, Your Honor.

10      THE COURT:  And does the corporation remain viable

11  after the payment of these economic penalties?

12      MR. RACANELLI:  We believe it does, Your Honor.

13      THE COURT:  Now, before I impose sentence,

14  Mr. Leclercq, do you wish to be heard on behalf of the

15  corporation personally?

16      MR. LECLERCQ:  No.  Thank you, Your Honor.

17      THE COURT:  Mr. Racanelli, do you wish to be heard

18  on behalf of the corporation personally?

19      MR. RACANELLI:  No.  Thank you, Your Honor.

20      THE COURT:  All right.

21      Mr. Lax, do you wish to be heard on behalf of the

22  Government?

23      MR. LAX:  No, Your Honor.  Thank you.

24      THE COURT:  Okay.

25      Now bolstered by an understanding of the

*Proceedings*                                              26

1   accounting process and where the penalty falls in connection

2   with the crime to be punished and the impact that it might

3   have on the ability of the corporation to proceed going

4   forward and that it would maintain its viability, the Court

5   is prepared to accept the sentence as recommended both by

6   the Government and by the defense.

7           What I'm going to do to make sure that all the I's

8   get dotted and all the T's get crossed, Mr. Lax, I'm going

9   to be guided by -- this is where that second time comes

10  in -- your reading into the record the economic consequences

11  of sentence.

12          MR. LAX:  Yes, Your Honor.

13          The total criminal fine is $374,560,071.

14          THE COURT:  Mr. Racanelli, is that your

15  understanding as well?

16          MR. RACANELLI:  Yes, Your Honor.

17          THE COURT:  We'll go item by item, Mr. Lax.

18          MR. LAX:  Then there's the timing of when those

19  were due and the offsets which we've discussed on the

20  record.  I don't know that the Court wishes for me to go

21  through those again now, but happy to if the Court prefers.

22          THE COURT:  Why don't you do it just for

23  imposition purposes.

24          MR. LAX:  Yes, Your Honor.

25          So approximately 50 percent of that total fine

*Proceedings*                                              27

1    will be paid no later than 10 business days after the entry

2    of judgment by the Court, and that amount is $187,280,036.

3            Then there will be credit of up to $93,640,017 of

4    the total fine against any amount that the company pays to

5    authorities in Switzerland and/or Ecuador.  And then any

6    amount unpaid to those authorities that then resolves the

7    remaining balance shall be paid within 12 months and then 10

8    business days from the entry of judgment.  Those are the

9    fine provisions.

10           THE COURT:  Is that your understanding, as well,

11   Mr. Racanelli?

12           MR. RACANELLI:  It is, Your Honor.

13           THE COURT:  Then that fine provision is the order

14   of the Court at sentence.

15           Next, Mr. Lax?

16           MR. LAX:  The forfeiture provisions provide for

17   forfeiture in the amount of $287,138,444 to be paid in full

18   within 10 business days of the entry of judgment.

19           THE COURT:  And, Mr. Racanelli, is that your

20   understanding, as well?

21           MR. RACANELLI:  Correct, Your Honor.

22           THE COURT:  That criminal forfeiture penalty is

23   therefore ordered as part of the sentence.

24           MR. LAX:  And we also, Your Honor, have as

25   Attachment G to the agreement a Consent Order of Forfeiture,

1  which the parties will sign and hand up to the Court's

2  deputy.

3          THE COURT:  All right.  And the Court will

4  execute.

5          MR. LAX:  And finally, for the economics, there's

6  the $400 mandatory special assessment paid within 10 days of

7  the date of sentencing.

8          THE COURT:  You said 10 business days,

9  Mr. Racanelli?

10         MR. RACANELLI:  Actually, this one is 10 regular

11  days, Your Honor.

12         THE COURT:  Okay, 10 regular days.

13         Therefore, that is ordered at sentence as well.

14         Anything else, Mr. Lax?

15         MR. LAX:  No, Your Honor.

16         (Pause in proceedings.)

17         THE COURT:  All right.  We have apparently checked

18  all our checklist, as well.  The sentence of the Court is,

19  therefore --

20         You had one document you wanted me to execute,

21  Mr. Lax?

22         MR. LAX:  Yes, Your Honor.

23         THE COURT:  The document is being signed in open

24  court.

25         (Pause in proceedings.)

*Proceedings*                                                    29

1          THE COURT:  All right.  We will enter the judgment
2    and also the consent that we just executed.
3          Is there anything else that the Court needs to
4    attend to before we adjourn from either side?
5          MR. LAX:  No, Your Honor.
6          I'll just note for the record, and forgive me if I
7    missed it, that there were no other promises made outside of
8    the Plea Agreement.  I just wanted to note that.
9          THE COURT:  I think I alighted them together.  But
10   yes, that was my understanding, if I didn't ask that
11   question.  I think I did.
12         But now that you raised it, we'll have
13   Mr. Leclercq and Mr. Racanelli respond.
14         MR. RACANELLI:  That is correct, Your Honor.
15         MR. LECLERCQ:  Yes, that is correct, Your Honor.
16         THE COURT:  We may have dotted that I twice, but
17   that's okay.
18         MR. LAX:  Nothing else from the Government, Your
19   Honor.
20         Thank you.
21         THE COURT:  Anything else from the defense?
22         MR. RACANELLI:  No, Your Honor.
23         THE COURT:  All right.  Thank you all.
24         Mr. Leclercq, safe travels.
25         MR. LECLERCQ:  Thank you, Your Honor.

*Proceedings*                                                    30

1          THE COURT:  Happy to see this chapter has ended,

2     and I look forward to Gunvor's continued participation

3     lawfully in the market.

4          MR. LECLERCQ:  Thank you, Your Honor.

5          THE COURT:  You're welcome.

6          (Matter concluded.)

7

8                              *   *   *

9

10                    CERTIFICATE OF REPORTER

11

12     I certify that the foregoing is a correct transcript of the

13     record of proceedings in the above-entitled matter.

14     /s/ Kristi Cruz
       _____
15     Kristi Cruz, RMR, CRR, RPR
       Official Court Reporter
16

17

18

19

20

21

22

23

24

25